2023R00868/ALW/FCM

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**FILED**

JUN 2 3 2026

AT 8:30  3:35 PM M
CLERK, U.S. DISTRICT COURT - DNJ

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Hon. Michael E. Farbiarz |
| v. | : | Case No. 26-316 |
| | : | |
| JUSTIN JENNINGS | : | 18 U.S.C. § 1348 |
| | : | 15 U.S.C. §§78j(b) and 78ff |
| | : | 17 C.F.R. § 240.10b-5 |
| | : | 18 U.S.C. § 1957 |
| | : | 18 U.S.C. § 2 |

**I N D I C T M E N T**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges as follows:

**Overview of the Scheme**

1.      Defendant JUSTIN JENNINGS made illegal profits trading in securities of various public companies (the "Companies") based on material nonpublic information ("MNPI") regarding the Companies—typically involving acquisitions of the Companies at premiums to their then-current stock prices—that JENNINGS misappropriated from his romantic partner ("Individual-1") and the public relations firm (the "PR Firm") that employed her. JENNINGS exploited the MNPI he possessed to make profitable and timely trades in the Companies' securities. In total, JENNINGS profited more than approximately $2.7 million from the scheme.

**Relevant Background—Defendant, Entities, and Terms**

2.      At certain times relevant to this Indictment:

a. The defendant, JUSTIN JENNINGS, was a resident of Lake Hiawatha, New Jersey, and formed the business entity Vortex Stategies, LLC ("Vortex"). JENNINGS was the sole member of Vortex.

b. "Brokerage Firm-1" was a brokerage firm headquartered in Omaha, Nebraska, and was acquired by a financial services company headquartered in Westlake, Texas. "Brokerage Firm-2" was a financial services company headquartered in Menlo Park, California. Brokerage Firm-1 and Brokerage Firm-2 provided electronic trading platforms through which investors could execute securities transactions, including transactions involving publicly traded stocks and options contracts. JENNINGS maintained brokerage accounts for Vortex at Brokerage Firm-1 (the "Brokerage Firm-1 Account") and Brokerage Firm-2 and traded securities in those accounts.

c. "Bank-1" was a financial institution headquartered in Cherry Hill, New Jersey, where JENNINGS maintained a bank account in Vortex's name (the "Bank-1 Account").

d. Individual-1 was a resident of New York, New York, and was in a committed romantic relationship with JENNINGS. Individual-1 was employed as an account executive for a public relations firm specialized in providing communications advice to companies engaged in, among other things, mergers and acquisitions, including

2

preparing press releases and managing internal and external communication strategies (the "PR Firm").

e. Company-1, Company-2, Company-3, Company-4, Company-5, Company-6, Company-7, and Company-8 (collectively, the "Companies") were either clients of the PR Firm or counterparties to corporate transactions with a client of the PR Firm.

f. The NASDAQ Stock Exchange ("NASDAQ") and the New York Stock Exchange ("NYSE") are United States stock exchanges, each with servers located in New Jersey.

g. A "call option" was a contract that provided the buyer with the right, but not the obligation, to purchase shares of the underlying security at a specified price (the "strike price") on or before the option's expiration date. The purchase of a call option was considered a "bullish" trade because the purchaser stood to benefit from an increase in the price of the underlying security.

h. A "put option" was a contract that provided the buyer with the right, but not the obligation, to sell shares of the underlying security at the strike price on or before the option's expiration date. The purchase of a put option was considered a "bearish" trade because the purchaser stood to benefit from a decrease in the price of the underlying security.

## COUNT 1
### (Securities Fraud)

3.     JENNINGS and Individual-1 became romantically involved in or around 2019, while Individual-1 was in college and JENNINGS was playing professional soccer in Europe. In or around 2021, JENNINGS's soccer career ended, and he returned to the United States. Around this time, JENNINGS and Individual-1's relationship became more serious, and they established an exclusive, committed relationship. JENNINGS, who was living and working in New Jersey, began spending significant amounts of time in Individual-1's apartment, often staying over for several days at a time.

4.     In or around September 2021, Individual-1 began working for the PR Firm. As part of her orientation, Individual-1 was required to read and a sign a form acknowledging the PR Firm's Employee Handbook and Policy Guide (the "Handbook"), which included the PR Firm's policies regarding confidentiality and insider trading.

5.     The Handbook noted that the PR Firm "and its partners and employees regularly come into possession of confidential information in the course of the [the PR Firm]'s business activities. The [PR Firm] is committed to protecting confidential information . . . [and] is also strongly committed to avoiding the misuse, or the appearance of misuse, of such information, whether in connection with the trading of securities or otherwise."

6.     The Handbook explained the law of insider trading and warned, in bold print, that "anyone who trades securities while in possession of material nonpublic

4

information, and anyone who provides such material nonpublic information to someone else who trades based on it, violates federal securities laws."

7.    Individual-1 was aware of the policies and warnings contained in the Handbook and of her obligation to maintain the confidentiality of MNPI related to the PR Firm's clients.

8.    During the period of the Indictment, the PR Firm had a hybrid work policy, the details of which changed at times, but which typically allowed Individual-1 to work from home periodically using her PR Firm-issued laptop computer (the "Laptop"). Also, as part of her responsibilities as an employee of the PR Firm, Individual-1 was frequently required to work in the evenings and on weekends, which she often did from home.

9.    Individual-1 lived in a one-bedroom apartment and typically worked with the Laptop at a desk in her bedroom. She also worked from JENNINGS's apartment when she visited him there.

10.    Individual-1 and JENNINGS shared a relationship of trust and confidence, and JENNINGS therefore knew that Individual-1 expected that he would not abuse any confidential information she shared with him. Individual-1 shared confidential and private details about her work and personal life, and passwords for the Laptop and online accounts, with JENNINGS. Individual-1 also allowed JENNINGS to use the Laptop to access subscription-based news services to which Individual-1 had access through the PR Firm. When she worked from home, Individual-1 typically left the Laptop on and did not log out of, or lock, the Laptop if

she stepped away from it, even if JENNINGS was present in the apartment. Individual-1 did this because she trusted JENNINGS, did not suspect that he would use the Laptop to access MNPI and trade on it, and would not have allowed him to do so.

11.   Individual-1 did not work on communication strategies, including press releases and other MNPI, involving any of the Companies.

## The Insider Trading Scheme

12.   From in or around February 2022 to in or around October 2024, in the District of New Jersey and elsewhere, the defendant,

**JUSTIN JENNINGS,**

did knowingly, and with intent to defraud, execute and attempt to execute a scheme and artifice to (a) defraud a person in connection with a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934; and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, that is, the defendant executed and attempted to execute a scheme to defraud in knowing violation of duties owed by JENNINGS to Individual-1—specifically, JENNINGS surreptitiously accessed and used material nonpublic information he obtained regarding upcoming corporate

6

announcements of the Companies, which involved the PR Firm's clients, to execute transactions in the Companies' securities.

### Manner and Means of the Insider Trading Scheme

13.    JENNINGS, in violation of the duty of trust and confidence arising out of his relationship with Individual-1, took advantage of his access to the Laptop and used it to acquire MNPI about the Companies (*i.e.*, the PR Firm's clients or, in the case of some impending corporate acquisitions, the counterparties of the PR Firm's clients) so that he could execute timely and profitable trades in securities of the Companies.

### Company-1 Acquisition

14.    In or around early 2022, the PR Firm began working on a communications strategy, including a draft press release, announcing the acquisition of Company-1, whose publicly traded stock was listed on the NASDAQ. The Company-1 Acquisition was announced before markets opened on or about Thursday, February 9, 2022.

15.    On or about Saturday, February 5, 2022, between approximately 7:30 and 8:10 p.m., JENNINGS, using the Laptop, accessed MNPI related to the Company-1 Acquisition, including a draft press release announcing the deal. JENNINGS continued to access MNPI related to the Company-1 Acquisition each evening between on or about February 6, 2022, and on or about February 8, 2022, including drafts of the press release, a letter to employees, and social media posts.

16.    On or about Monday, February 7, 2022, shortly after markets opened, JENNINGS purchased Company-1 call options with various strike prices and expiration dates, as follows:

| Quantity | Expiration Date | Strike Price | Cost (appx.) |
|---|---|---|---|
| 6 | February 18, 2022 | $22.50 | $2,960 |
| 2 | February 18, 2022 | $25 | $540 |
| 1 | February 18, 2022 | $30 | $100 |
| 1 | March 18, 2022 | $25 | $350 |
| 1 | June 17, 2022 | $25 | $430 |
| 4 | March 18, 2022 | $30 | $375 |
| | | Total | $4,755 |

At the time, shares of Company-1 stock were trading at approximately $27 per share.

17.    On or about February 9, 2022, within hours after the Company-1 Acquisition was announced, JENNINGS sold all of the Company-1 call options for a total of approximately $32,350, resulting in a profit of approximately $27,595. At this time, shares of Company-1 stock were trading at approximately $47 per share.

**Company-2 Acquisition**

18.    In or around early 2022, the PR Firm began working on a communications strategy, including a draft press release, announcing the acquisition of Company-2, a company whose publicly traded stock was listed on the NYSE. The Company-2 Acquisition was announced before markets opened on or about Wednesday, February 23, 2022, and set forth a purchase price of $20 per share, which represented a 100.4% premium over Company-2's previous day closing stock price.

19.    On or about Saturday, February 5, 2022, between approximately 8:15 and 8:40 p.m., JENNINGS, using the Laptop, accessed MNPI related to the

8

Company-2 Acquisition, specifically, a draft press release announcing the deal. JENNINGS continued to access MNPI related to the Company-2 Acquisition on or about February 15, 16, 19, and 22, 2022, including drafts of the press release, a communications rollout, letter to employees, and a Q&A document.

20.    Between on or about Monday, February 14, 2022, and on or about Thursday, February 17, 2022, JENNINGS purchased Company-2 call options with various strike prices and expiration dates, as follows:

| Quantity | Expiration Date | Strike Price | Cost (appx.) |
|---|---|---|---|
| 7 | March 18, 2022 | $9 | $1,280 |
| 11 | March 18, 2022 | $10 | $1,510 |
| 11 | March 18, 2022 | $11 | $940 |
| 20 | March 18, 2022 | $12 | $1,000 |
| 10 | March 18, 2022 | $14 | $170 |
| 11 | April 14, 2022 | $10 | $1,665 |
| 2 | April 14, 2022 | $11 | $188 |
| 5 | April 14, 2022 | $12 | $350 |
| 5 | July 15, 2022 | $10 | $1,075 |
| 10 | October 21, 2022 | $12 | $2,000 |
| 5 | December 16, 2022 | $13 | $875 |
| | | Total | $11,053 |

At the time, shares of Company-2 stock were trading at approximately $10 per share.

21.    On or about February 23, 2022, after the Company-2 Acquisition was announced, JENNINGS sold all of the Company-2 call options for a total of approximately $76,846, resulting in a profit of approximately $65,793. At this time, shares of Company-2 stock were trading at approximately $20 per share.

### Company-3 Acquisition

22.     In or around Summer 2022, the PR Firm began working on a communications strategy, including a draft press release, announcing the acquisition of Company-3, whose publicly traded stock was listed on the NASDAQ (the "Company-3 Acquisition"). The Company-3 Acquisition was announced before markets opened on or about Monday, July 25, 2022.

23.     On or about Thursday, July 7, 2022, between approximately 10:00 and 10:15 p.m., and on or about July 8, 2022, at approximately 12:00 a.m. and 7:00 a.m., JENNINGS, using the Laptop, accessed MNPI related to the Company-3 Acquisition, including a draft press release announcing the deal. That weekend, on or about July 9 and 10, 2022, JENNINGS continued to access MNPI related to the Company-3 Acquisition. JENNINGS continued to access MNPI related to the Company-3 Acquisition on or about July 13, 17, 18, 20, 21, and 24, 2022.

24.     Between on or about Tuesday, July 12, 2022, and on or about Thursday, July 21, 2022, JENNINGS purchased Company-3 call options with various strike prices and expiration dates, as follows:

| Quantity | Expiration Date | Strike Price | Cost (appx.) |
|---|---|---|---|
| 75 | August 19, 2022 | $10 | $4,207 |
| 100 | August 19, 2022 | $12.50 | $1,571 |
| 15 | August 19, 2022 | $7.50 | $2,425 |
| 5 | November 18, 2022 | $7.50 | $1,025 |
| | | Total | $9,228 |

At the time, shares of Company-3 stock were trading between approximately $8.50 and $10 per share.

25.    On or about July 25 and 26, 2022, after the Company-3 Acquisition was announced, JENNINGS sold all of the Company-3 call options for a total of approximately $46,400, resulting in a profit of approximately $37,172. At this time, shares of Company-3 stock were trading at approximately $13.75 per share.

## Company-4 Acquisition

26.    In or around Fall 2022, the PR Firm began working on a communications strategy, including a draft press release, announcing a non-binding proposal by a company based in Tokyo, Japan, to purchase outstanding shares of Company-4, a company whose public traded stock was listed on the NYSE (the "Company-4 Acquisition"). The Company-4 Acquisition was announced on or about Sunday, October 2, 2022, at approximately 7:30 p.m., before markets opened in Japan.

27.    On or about Saturday, September 17, 2022, at approximately 6:05 p.m., JENNINGS, using the Laptop, accessed MNPI related to the Company-4 Acquisition, specifically, a draft press release announcing the deal. During the evening hours on or about September 20, 21, 25, 27, and 29, 2022, JENNINGS continued to access MNPI related to the Company-4 Acquisition, including drafts of the press release, a communications plan, and a leak scenario plan. On or about Saturday, October 1, 2022, JENNINGS accessed the draft press release related to the Company-4 Acquisition at approximately 12:50 p.m.

11

28.    On or about Tuesday, September 20, 2022, and Tuesday, September 27, 2022, JENNINGS purchased call options with various strike prices and expiration dates, as follows:

| Quantity | Expiration Date | Strike Price | Cost (appx.) |
|---|---|---|---|
| 40 | October 21, 2022 | $20 | $5200 |
| 10 | October 21, 2022 | $22.50 | $670 |
| 30 | October 21, 2022 | $20 | $1,710 |
| | | Total | $7,580 |

At the time, shares of Company-4 stock were trading between approximately $17 and $18 per share.

29.    On or about Monday, October 3, 2022, after the Company-4 Acquisition was announced, JENNINGS sold all the Company-4 call options for a total of approximately $34,980, resulting in a profit of approximately $27,400. At this time, shares of Company-4 stock were trading at approximately $24 per share.

## Company-5 Acquisition

30.    In or around early 2023, the PR Firm began working on a communications strategy, including a draft press release, announcing the acquisition of Company-5, which was an operator of truck stops, restaurants, and service centers whose publicly traded stock was listed on the NASDAQ (the "Company-5 Acquisition"). The Company-5 Acquisition was announced before markets opened on or about Wednesday, February 16, 2023, and set forth a purchase price of approximately $86 per share, which represented an 84% premium over the Company-5 average trading price over the prior 30 days.

31.     Each day between on or about Friday, February 10, 2023, and on or about Sunday, February 12, 2023, and between on or about Tuesday, February 14, 2023, and on or about Thursday, February 16, 2023, JENNINGS, using the Laptop, accessed MNPI related to the Company-5 Acquisition, including a draft press release announcing the deal, as well as drafts of a communications plan, social media posts, and talking points for an employee town hall.

32.     On or about Monday, February 13, 2023, JENNINGS purchased 20 shares of Company-5 stock at approximately $47 per share for a total of approximately $940. On or about Monday, February 13, 2023, and Wednesday, February 15, 2023, JENNINGS purchased Company-5 call options with various strike prices and expiration dates, as follows:

| Quantity | Expiration Date | Strike Price | Cost (appx.) |
|---|---|---|---|
| 220 | February 17, 2023 | $50 | $5,360 |
| 30 | March 17, 2023 | $55 | $2,500 |
| 10 | March 17, 2023 | $55 | $1,000 |
| 10 | March 17, 2023 | $55 | $1,000 |
| | | Total | $9,860 |

33.     On or about February 15, 2023, JENNINGS sold approximately ten Company-5 February 17, 2023 call option contracts. On or about Thursday, February 16, 2023, after the Company-5 Acquisition was announced, JENNINGS sold all of the remaining Company-5 call options for a total of approximately $868,270. On or about February 24, 2023, JENNINGS sold all 20 shares of Company-5 stock for approximately $84.50 per share for a total of approximately $1,690. JENNINGS's timely trading before the Company-5 Acquisition resulted in a total profit of approximately $859,160.

**Company-6 Earnings Announcement**

34.    In or around Summer 2023, the PR Firm began working on a communications strategy, including a draft media statement, announcing second quarter 2023 earnings for Company-6, a company whose publicly traded stock was listed on the NYSE (the "Company-6 Announcement"). The Company-6 Announcement was made after the market closed on or about Wednesday, July 19, 2023, and revealed earnings below expectations and included critical regulatory and financial disclosures.

35.    On or about Monday, July 17, 2023, between approximately 7:10 and 7:30 a.m., JENNINGS, using the Laptop, accessed MNPI related to the Company-6 Announcement, specifically, a draft media statement and a "Scenario Planning Addendum." Later that evening around 8:40 p.m. and the next evening on or about July 18, 2023, around the same time, JENNINGS continued to access MNPI related to the Company-6 Announcement, including drafts of the media statement and email notifications.

36.    On or about Monday, July 17, 2023, and Tuesday, July 18, 2023, JENNINGS purchased put options with various strike prices and expiration dates, as follows:

| Quantity | Expiration Date | Strike Price | Cost (appx.) |
|---|---|---|---|
| 320 | July 28, 2023 | $110.00 | $11,191 |
| 100 | July 28, 2023 | $115.00 | $12,000 |
| 60 | August 11, 2023 | $115.00 | $10,800 |
| 50 | August 18, 2023 | $110.00 | $4,351 |
| 80 | August 18, 2023 | $115.00 | $15,712 |
| 100 | July 21, 2023 | $115.00 | $4,925 |
| 75 | July 21, 2023 | $116.00 | $4,869 |

14

| 50 | July 21, 2023 | $117.00 | $4,000 |
| 50 | July 21, 2023 | $118.00 | $5,154 |
| 50 | July 21, 2023 | $119.00 | $6,500 |
| 100 | August 4, 2023 | $115.00 | $11,964 |
| 100 | August 4, 2023 | $116.00 | $13,912 |
| | | Total | $105,378 |

At the time, shares of Company-6 stock were trading at approximately $120 per share.

37.    On or about Thursday, July 20, 2023, the morning after the Company-6 Announcement, JENNINGS sold all of the Company-6 put options for a total of approximately $1,090,455, resulting in a profit of approximately $985,077. At this time, shares of Company-6 stock were trading at approximately $102 per share.

**Company-7 Acquisition**

38.    In or around Summer 2024, the PR Firm began working on a communications strategy, including a draft press release, announcing the acquisition of Company-7, a company whose publicly traded stock was listed on the NYSE (the "Company-7 Acquisition"). The Company-7 Acquisition was announced on or about Friday, July 26, 2024, and set forth a purchase price of approximately $14.25 per share, which represented a 56% premium over Company-7's previous day closing price.

39.    On or about Friday, July 19, 2024, at approximately 8:00 p.m., JENNINGS, using the Laptop, accessed MNPI related to the Company-7 Acquisition, specifically, a draft press release announcing the deal. On or about the evening of Sunday, July 21, 2024, the morning of Monday, July 22, 2024, and the evening of Thursday, July 25, 2024, JENNINGS continued to access MNPI related to the

15

Company-7 Acquisition, including drafts of the press release, a communications rollout, and a "Key Messages" document.

40.    On or about Monday, July 22, 2024, and Tuesday, July 23, 2024, JENNINGS purchased call options with various strike prices and expiration dates, as follows:

| Quantity | Expiration Date | Strike Price | Cost (appx.) |
|---|---|---|---|
| 1000 | August 16, 2024 | $10 | $20,000 |
| 250 | September 20, 2024 | $10 | $10,000 |
| 200 | October 16, 2024 | $10 | $12,000 |
| | | Total | $42,000 |

At the time, shares of Company-7 stock were trading at approximately $9 per share.

41.    On or about Monday, July 26, 2024, after the Company-7 Acquisition was announced, JENNINGS sold all the Company-7 call options for a total of approximately $416,550, resulting in a profit of approximately $374,550. At this time, shares of Company-7 stock were trading at approximately $13 per share.

## Company-8 Announcement

42.    In or around Fall 2024, the PR Firm began working on a communications strategy, including a draft press release, announcing that Company-8, a company operating an electric vehicle fast charging network and whose publicly traded stock was listed on the NASDAQ, had received a conditional loan guarantee of up to $1.05 billion from the United States Department of Energy (the "Company-8 Announcement"). The Company-8 Announcement was made on Thursday, October 3, 2024.

43.    On or about Wednesday, September 25, 2024, from approximately 8:00 to 8:15 a.m., JENNINGS, using the Laptop, accessed MNPI related to the Company-8 Announcement, specifically, a draft announcement release, a "Town Hall Script & Q&A" document, and a "Loan Announcement Rollout" document. JENNINGS continued to access MNPI related to the Company-8 Announcement again that evening and each day between on or about September 26 and on or about October 1, 2024, except for on or about September 28, 2024.

44.    Between on or about Thursday, September 26, 2024, and Tuesday, October 1, 2024, JENNINGS purchased call options with various strike prices and expiration dates, as follows:

| Quantity | Expiration Date | Strike Price | Cost (appx.) |
|---|---|---|---|
| 2044 | October 18, 2024 | $4.50 | $45,400 |
| 1500 | October 18, 2024 | $4.50 | $31,500 |
| 300 | October 18, 2024 | $4.00 | $9,000 |
| | | Total | $85,900 |

At this time, shares of Company-8 stock were trading at approximately $4 per share.

45.    On or about September 27, 2024, JENNINGS sold 44 call options for a total of approximately $1,100. After the Company-8 Announcement, between on or about Thursday, October 3, 2024, and on or about Tuesday, October 8, 2024, JENNINGS sold all the remaining call options for a total of approximately $440,800, resulting in a total profit of approximately $356,000. At this time, shares of Company-8 stock were trading at approximately $6 per share.

## Flow Of Fraud Proceeds

46.    JENNINGS received the proceeds of his insider trading scheme in the Brokerage Account and transferred funds to the Bank-1 Account. For example:

a. On or about February 17, 2023, after receiving proceeds of approximately $868,270 from trading in Company-5 call options the day before, JENNINGS transferred $150,000 from Brokerage Account to Bank-1 Account.

b. On or about July 20, 2023, after receiving proceeds of approximately $1,090,455 from trading in Company-6 put options earlier that day, JENNINGS transferred $250,000 from Brokerage Account to Bank-1 Account.

47.    After receiving funds in Bank-1 Account, JENNINGS wrote checks to himself to deposit into another bank account. The memo lines of the checks often included notations such as "capital contribution," "capital distribution," "profit dist," or similar terms.

All in violation of Title 18, United States Code, Section 1348 and Section 2.

## COUNTS 2–9
### (Securities Fraud)

48.    Paragraphs 1 through 12 and 14 through 48 of this Indictment are realleged here.

49.    On or about the dates specified as to each count below, in the District of New Jersey, and elsewhere, the defendant,

**JUSTIN JENNINGS,**

did knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and facilities of national securities exchanges, in connection with the purchase and sale of securities, use and employ, and cause others to use and employ, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing, and causing others to employ, devices, schemes, and artifices to defraud; (b) making, and causing others to make, untrue statements of material fact and omitting to state, and causing others to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging, and causing others to engage, in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, that is, in violation of his duties of trust and confidence to Individual-1, JENNINGS knowingly and willfully traded the Companies' securities on the basis of material nonpublic information that he obtained in breach of his relationship of trust and confidence to Individual-1, when he executed and caused

19

others to execute the securities transactions listed below on or about the dates listed below:

| Count | Issuer | Approx. Trade Dates | Approx. Number of Securities Purchased |
|---|---|---|---|
| 2 | Company-1 | February 7, 2022 | 15 call options |
| 3 | Company-2 | February 14-17, 2022 | 97 call options |
| 4 | Company-3 | July 12-21, 2022 | 195 call options |
| 5 | Company-4 | September 20-27, 2022 | 80 call options |
| 6 | Company-5 | February 13, 2023 | 270 call options; 20 shares of stock |
| 7 | Company-6 | July 17-18, 2023 | 1,135 put options |
| 8 | Company-7 | July 22-23, 2024 | 1,450 call options |
| 9 | Company-8 | September 25-October 1, 2024 | 3,844 call options |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

## COUNTS 10-11
### (Transacting in Criminal Proceeds)

50.    Paragraphs 1 through 12 and 14 through 48 of this Indictment are realleged here.

51.    On or about the dates listed below, in the District of New Jersey and elsewhere, the defendant,

**JUSTIN JENNINGS,**

did knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a greater value than $10,000, such property having been derived from a specified unlawful activity, that is, securities fraud, as follows:

| Count | Approximate Date | Transaction |
|-------|------------------|-------------|
| 10 | February 17, 2023 | Electronic transfer of $150,000 from Brokerage Firm-1 Account to Bank-1 Account |
| 11 | July 20, 2023 | Electronic transfer of $250,000 from Brokerage Firm-1 Account to Bank-1 Account |

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATION AS TO COUNTS 1-9

52.    Upon conviction of any of the securities fraud offenses charged in Counts 1 through 9 of this Indictment, the defendant,

**JUSTIN JENNINGS,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses.

## FORFEITURE ALLEGATION AS TO COUNTS 10-11

53.    Upon conviction of any of the offenses in violation of Title 18, United States Code, Section 1957 charged in Counts 10 and 11 of this Indictment, the defendant,

**JUSTIN JENNINGS,**

shall forfeit to the United States, pursuant to Title 18, United States Code, 982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property.

## Substitute Assets Provision

54.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

22

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL



ROBERT FRAZER
United States Attorney

Aaron L. Webman
Farhana C. Melo
Assistant U.S. Attorneys

Approved by:

Elaine Lou
Chief, Criminal Division

CASE NUMBER: <u>26-316</u>

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

v.

## JUSTIN JENNINGS

# INDICTMENT FOR

18 U.S.C. § 1348
15 U.S.C. § 78j(b) and 78ff
17 C.F.R. § 240.10b-5
18 U.S.C. § 1957
18 U.S.C. § 2



### ROBERT FRAZER
UNITED STATES ATTORNEY

Aaron L. Webman
Farhana C. Melo
Assistant U.S. Attorney
Newark, New Jersey
973-454-3622